UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

MAY 27 2005

CLERK

| | | |
|---|---|---|
| JERRY SETZER, | ) | CIV. 03-4219-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | OPINION AND |
| | ) | ORDER GRANTING |
| SOUTH DAKOTA STATE | ) | MOTIONS FOR |
| PENITENTIARY, DOUGLAS WEBER, | ) | SUMMARY JUDGMENT |
| EUGENE REGIER, SOUTH DAKOTA | ) | |
| DEPARTMENT OF HEALTH, SIOUX | ) | |
| VALLEY HOSPITAL ASSOCIATION, | ) | |
| INC., and SIOUX VALLEY HOSPITAL | ) | |
| AND HEALTH SYSTEMS, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jerry Setzer, filed a complaint against the South Dakota State Penitentiary (SDSP); Douglas Weber, Warden of the SDSP; Eugene Regier, Director of Health Services at SDSP; South Dakota Department of Health (SDDOH); Sioux Valley Hospital Association, Inc., and Sioux Valley Hospital and Health Systems (hereinafter collectively referred to as Sioux Valley) after he lost his right leg after months of fighting a toe infection. The complaint alleges multiple causes of action against defendants, including § 1983 claims and state-law claims. Defendants deny the allegations and move for summary judgment. Plaintiff opposes the motions.

## FACTS

Considering the facts in a light most favorable to the plaintiff, Setzer was incarcerated in the SDSP and Douglas Weber was the warden at the SDSP during all relevant times. SDSP Undisputed Material Facts ¶¶ 1-2. Dr. Eugene Regier was the Director of Health Services and provided medical treatment to Setzer during the relevant time period. Id. at ¶ 3. The South Dakota Department of Health (SDDOH) has been responsible for health care at the SDSP since May 11, 2001. Id. at ¶ 4.

Setzer was first seen for an infected and swollen right big toe on October 23, 2001, by a nurse in Health Services. Id. at ¶ 5. Setzer reported having stubbed his toe playing basketball and that the toe had become red and swollen with a red streak extending up the ankle. Id. at ¶ 6. Setzer also alleges that a shower drain backed up sewage, causing the initial toe infection. Dr. Regier examined Setzer's toe over the next several days and eventually referred Setzer to an infectious disease specialist. Id. at ¶¶ 8, 11.

On October 29, 2001, Setzer was hospitalized for a surgical procedure and a course of antibiotics to treat the toe infection. Id. at ¶ 15. Setzer was discharged on November 5, 2001, but was readmitted on November 11, 2001, with a post-operative infection. Id. at ¶¶ 16-19. Setzer received a Doppler exam and MRI of his foot and a second surgical procedure. Id. at ¶¶ 19-20. Setzer was discharged again on November 29, 2001, after gradual improvement in his foot. Id. at ¶ 21. On

2

December 12, 2001, Setzer saw infectious disease specialist Dr. Lockwood, who reported that he expected full recovery in a month and that he saw no active signs of infection. Id. at ¶¶ 11, 23. On December 16, 2001, Dr. Regier again transferred Setzer to Sioux Valley Hospital for treatment of a right foot staph infection, a course of antibiotics, an MRI, and surgical procedures on December 19 and 22, 2001. Id. at ¶¶ 24-25. Setzer was discharged on January 9, 2002.

On January 19, 2002, Setzer was seen at Sioux Valley Hospital and reported ankle pain despite improvement in his wound site. Id. at ¶¶ 30-31. Further analysis could not rule out bone infection or loss and Setzer underwent another surgical procedure to explore the condition of the bone on January 23, 2002. Id. at ¶¶ 32-33. On January 29, 2002, testing revealed increased blood and white cell counts in Setzer's foot. Id. at ¶ 34.

On February 18, 2002, Setzer was seen at Sioux Valley Hospital where Dr. Lockwood reported that Setzer may lose his foot if his infection is not resolved. Id. at ¶ 40. Setzer underwent several more surgical procedures in February and March 2002. Id. at ¶¶ 41-43.

On April 2, 2002, Setzer was seen by Dr. Meyer at Plastic Surgery Associates. Id. at ¶ 45. Dr. Meyer advised Setzer to keep a protective wrap on his entire foot and ankle area and to elevate the foot when not walking. Id.

3

When Setzer again reported ankle pain on April 13, 2002, he was referred to McKennan Hospital for a course of antibiotics and a surgical procedure on April 16, 2002. Id. at ¶¶ 49-50. On April 19, 2002, Setzer informed a nurse at McKennan of his desire to have his foot amputated. Id. at ¶ 52. Setzer had a below the knee right leg amputation on April 22, 2002. Id. at ¶ 54. Setzer was discharged from McKennan Hospital on April 30, 2002. Id. at ¶ 55. Setzer subsequently had similar difficulty with the care and treatment of infections on his stump. Id. at ¶¶ 57-62, 63, 68-69.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91

4

L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. Anderson, 106 S. Ct. at 2513.

## DISCUSSION

### I. Claims Against SDSP and SDDOH

In his complaint, Setzer asserts claims under § 1983 for deliberate indifference to his medical care against the SDSP, and a negligence claim against the SDDOH. Setzer seeks money damages against both defendants and does not seek injunctive relief. States and state officials are not liable for damages on § 1983 claims alleged against them in their official capacity because of Eleventh Amendment immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Furthermore, a state and its instrumentalities are immune from suit in federal court for negligence claims under the Eleventh Amendment unless its constitutional immunity has been expressly waived.[1] Walstad v. University of Minnesota Hospitals, 442 F.2d 634, 641-42 (8th Cir. 1971). State agencies are entitled to all the immunities of the state itself. Glick v. Henderson, 855 F.2d 536, 540 (8th Cir. 1988). The South Dakota Department of Corrections (SDDOC) is a state agency created by the South Dakota Legislature. SDCL 1-15-1.2 (noting creation of the Department of

---

[1] South Dakota has not waived Eleventh Amendment immunity for federal court damages actions. See South Dakota Constitution, Article III, § 27.

5

Corrections). The SDSP is merely a facility operated by the SDDOC. SDCL 1-15-1.4. The SDDOH is also a state agency created by the South Dakota Legislature. SDCL 1-15-1.2 (noting creation of the Department of Health). Therefore, the SDSP and SDDOH are entitled to the same immunity from damages on § 1983 claims and negligence claims as the state itself would be. Thus, SDSP and SDDOH are entitled to summary judgment for the § 1983 claims and SDDOH is entitled to summary judgment for the negligence claim.

## II.     Claims Against Weber and Dr. Regier

### A.     State-Law Claims

In his complaint, Setzer asserts state-law claims of intentional infliction of emotional distress against Weber and Dr. Regier. South Dakota law provides that "[n]o person, political subdivision or the state is liable . . . any injury caused by or resulting from . . . services or programs administered by or on behalf of the prison, jail or correctional facility." SDCL 3-21-9(5). See also SDCL 3-21-8 (protecting state against claims for failure to provide services in a prison or correctional facility). These statutes provide a complete defense to state-law claims brought against governmental bodies and state actors for prison conditions. Webb v. Lawrence County, 144 F.3d 1131, 1139-40 (8th Cir. 1998). Therefore, Weber and Dr. Regier are entitled to summary judgment on the state-law claims because of the statutory immunity afforded by South Dakota law.

6

**B.     § 1983 Claim**

Setzer's § 1983 claim alleges that Weber and Dr. Regier were deliberately indifferent to Setzer's medical needs. The Eleventh Amendment does not bar § 1983 claims against state officials in their individual capacities. Hafer v. Melo, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (quoting Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). A qualified immunity defense, however, may shield state officials sued in their individual capacities. Hafer, 502 U.S. at 25.

The doctrine of qualified immunity protects officials from frivolous suits that would impede their ability to discharge their duties and discretionary functions. Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000). Thus, officials receive immunity so long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987)). To determine whether defendants exhibited deliberate indifference and are not entitled to qualified immunity, the court must apply a three-part test: (1) a plaintiff must prove a violation of a constitutional or statutory right; (2) the right must clearly be established at the time of the alleged violation; and (3) a reasonable official would have known the alleged action violated that right. Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

7

The first and second prongs of the qualified immunity test are met here. The prohibition of cruel and unusual punishment in the Eighth Amendment of the Constitution includes the protection of prisoners from deliberate indifference to serious medical needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). A serious medical need includes protection from a known risk of infection. Id. at 1241 (citing DeGidio v. Pung, 920 F.2d 525 (8th Cir. 1990) (finding deliberate indifference in prison's failure to respond to infection outbreak affecting 200 prisoners)). Thus, the first prong is satisfied. Second, the Eighth Circuit clearly requires that prisoners receive adequate medical care. Id. at 1237. Thus, the remaining qualified immunity issue is "whether a reasonable official would have known that the alleged action indeed violated [Setzer's Eighth Amendment right]." Gregoire, 236 F.3d at 417.

Deliberate indifference is akin to criminal recklessness. Farmer v. Brennan, 511 U.S. 825, 839-40, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). It occurs when an official actually knows of and disregards a prisoner's serious medical needs. Boyd, 47 F.3d at 968. "Thus, the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). Mere negligence or inadvertence by an official does not rise to the level of deliberate indifference. Liebe, 157 F.3d at 578; Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993).

8

To rise to the level of a constitutional violation, however, it is not enough that the official should have known of the risk. Gregoire, 236 F.3d at 417. The plaintiff must prove that "the official in question did in fact know of the risk." Id. Inferences based on the obviousness of the risk, id., or circumstantial evidence may be sufficient proof. Boyd, 47 F.3d at 968. An official is not liable for subsequent injury if the official responded reasonably to the risk. Gregoire, 236 F.3d at 417. "The question is not whether the jailers did all they could have, but whether they did all the Constitution requires . . . . [T]hey are not constitutionally liable for every failure, only those where they are deliberately indifferent[.]" Id.

### 1. Weber

Defendant Weber is sued in his individual capacity as a supervisory official employed by the SDSP during the relevant time period. "[S]upervisors are not liable for Eighth Amendment claims brought under section 1983 on a respondeat superior theory." Choate, 7 F.3d at 1376 (citation omitted). Supervisors incur liability only if they are personally involved in a constitutional violation or if their corrective inaction amounts to deliberate indifference. Id. A supervisor's general prison operation responsibilities alone do not constitute personal involvement necessary to support any supervisor liability under § 1983. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). See also Gregoire v. Weber, No. CIV. 97-4126, at 13 (D.S.D. Dec. 20, 1999). "'The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn

9

a blind eye for fear of what [he] might see.'" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

Weber was the warden of SDSP at the time of the events in question. A warden is not deliberately indifferent unless a plaintiff proves that the warden knew of and disregarded an excessive risk to a plaintiff's health or safety. Liebe, 157 F.3d at 577. "[A] warden's general responsibility for supervising the operations of the prison is insufficient to establish personal involvement." Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987). The extensive number and content of Setzer's requests for administrative remedies make clear that Weber may have been aware of the seriousness of Setzer's ongoing infection and his complaints regarding sanitation at the prison.

Even if Weber knew of an excessive risk to Setzer's health or safety, however, Setzer must also demonstrate that Weber's "corrective inattention amounts to deliberate indifference to or tacit authorization of the violative practices." Choate, 7 F.3d at 1376. There is no evidence in the record to show that Weber was aware that any SDSP staff were being deliberately indifferent to Setzer's medical needs. In fact, the record negates any allegation of deliberate indifference because the record is replete with frequent medical care for Setzer's increasingly difficult infection. SDSP Undisputed Material Facts ¶¶ 5, 7-8, 11, 14-17, 19-21, 23-26, 28-34, 37, 40, 42-43, 45, 49-50. 52, 54-55, 58-62, 64, 68-69, and 71. Furthermore, supervisory officials are "generally entitled to delegate medical responsibility to facility medical staffs and are entitled to

10

rely on the opinion of medical staff concerning the proper course of treatment." Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 183 (N.D.N.Y. 1996). The record reflects that Weber delegated medical responsibility to trained medical personnel and relied on their opinions regarding proper medical treatment for Setzer. There is no basis for supervisor liability with regard to Weber in the record.

### 2.     Dr. Regier

To succeed on a deliberate indifference to a known medical need claim, the burden is on the plaintiff to present competent evidence that (1) the plaintiff suffered from an objectively serious medical need, and (2) that the physician actually knew of and deliberately disregarded that need. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). An inmate's deliberate indifference claim fails if the prison medical staff takes affirmative, deliberate steps to address the inmate's medical needs, even if those steps amount to negligence or fail to prevent harm to the inmate. Gregoire, 236 F.3d at 418. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000).

Dr. Regier referred Setzer for numerous consultations with medical personnel, including two infectious disease specialists and orthopedic specialists, both inside and outside the prison. Setzer's medical expert, Dr. Paul D. Reynen, made no findings of what standard of care Dr. Regier should have complied with much less if his actions

11

breached any standard. Dr. Reynen described Setzer's medical case as "puzzling." Plaintiff's Response to Sioux Valley's Motion for Summary Judgment, Docket 39. Exhibit 21. Although Dr. Reynen alludes that the prison should carefully consider Setzer's bacteria exposure, he never opines that anyone breached a standard of care owed to Setzer. Id. at Exhibits 21-25. Dr. Reynen went on to state that no one has a clear understanding or can state with any certainty why Setzer suffered an infection resulting in the loss of his leg. Id. at Exhibits 22-23. Just because Setzer suffered harm, however, does not demonstrate deliberate indifference. There is no evidence in the record that Setzer was denied or delayed access to medical care or that Dr. Regier was deliberately indifferent to Setzer's medical conditions. Thus, Dr. Regier is entitled to summary judgment on the § 1983 claim.

### III. Sioux Valley Defendants

Setzer alleges that Sioux Valley committed negligence in discharging him before his infection was completely resolved. Setzer also alleges that Sioux Valley subjected him to emotional distress by subjecting him to numerous surgeries. See Plaintiff's Additional Statements of Undisputed Material Fact, Docket 40. Absent obvious negligence, such as operating on the wrong limb, a plaintiff must use expert testimony to establish negligence in a medical malpractice case. Magbuhat v. Kovarik, 382 N.W.2d 43, 46 (S.D. 1986). A physician has a duty to possess and use the knowledge and skill ordinarily possessed and exercised by physicians with similar practice in

12

comparable localities. Id. Negligence does not automatically follow from errors in judgment. Jorgenson v. Vener, 616 N.W.2d 366, 372 (S.D. 2000). Here, Setzer's expert does not opine that Sioux Valley breached the standard of care by sending Setzer back to prison after it had completed medical treatments nor does he opine that Sioux Valley breached any standard of care. Without such evidence, Setzer's medical negligence case must fail.

In his complaint, Setzer claims his emotional distress is caused by Sioux Valley's negligence in this case. One of the elements of a negligent infliction of emotional distress claim is that the defendant must have engaged in negligent conduct towards the plaintiff. First Nat'l Bank in Sioux Falls v. Drier, 574 N.W.2d 597, 600 (S.D. 1998). Absent any of the required proof of negligence, Setzer cannot demonstrate intentional infliction of emotional distress. Setzer's state-law claims against Sioux Valley cannot survive summary judgment.

## CONCLUSION

Viewing the evidence most favorably to plaintiff, there are no issues of fact for a jury to determine as to any of the named defendants. SDSP, Douglas Weber, Dr. Eugene Regier, SDDOH, Sioux Valley Hospital Association, Inc., and Sioux Valley Hospital and Health Systems are entitled to summary judgment on all claims. Accordingly it is hereby

ORDERED that:

13

(1) SDSP defendants' motion for summary judgment (Docket 22) is granted, and

(2) Sioux Valley defendants' motion for summary judgment (Docket 26) is granted.

Dated May 27, 2005.

        BY THE COURT:

        *[signature]*
        KAREN E. SCHREIER
        UNITED STATES DISTRICT JUDGE